# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

WILLIAM F. SCHULTZ,

        Plaintiff,

    -vs-                                               Case No. 14-C-64

**THE BUILDING TRADES UNITED
PENSION TRUST FUND PLAN, and
THE BOARD OF TRUSTEES OF THE
BUILDING TRADES UNITED PENSION
TRUST FUND PLAN,**

        Defendants.

---

## DECISION AND ORDER

---

On May 1, 2012, William Schultz retired at age 55 as a member of the Laborer's Union Local 113 and participant in the Building Trades United Pension Trust Fund Plan (the Plan). This action relates to the Plan's denial of Schultz's post-retirement application for total disability benefits (TDB). Schultz's application, if successful, would have resulted in him receiving a full retirement benefit.[1]

The defendants in this case are the Plan and the Board of Trustees for the Plan, which serves as the Plan administrator. Before the Court are

---

[1] Under the Plan, early retirees receive 92% of the Normal Retirement Benefit at age 55, 93% at age 56, and so on until the full retirement age of 63.

cross-motions for judgment on the pleadings. Fed. R. Civ. P. 12(c). For the reasons that follow, the defendants' motion is granted, and Schultz's motion is denied.

On October 29, 2012, the Board of Trustees sent Mr. Schultz the following letter:

> If you are suffering from a disability, you know that becoming disabled and coping with the changes resulting from a disability is often an unexpected and difficult time for individuals. Because of this, you may have applied for Early Retirement Benefits without considering the fact that you may have been eligible for Total and Permanent Disability Benefits.
>
> Under current Plan provisions, an individual may apply for Total and Permanent Disability Benefits if:
>
> \* You meet the eligibility requirements for Total and Permanent Disability Benefits as described on page 57 and 58 of the Summary Plan Description (copy enclosed); and
>
> \* Application for Total and Permanent Disability Benefits is made within 12 months of when your Early Retirement Benefits began; and
>
> \* The Disability existed at the time Early Retirement Benefits started.
>
> Only one of the following is required for evidence of your Total and Permanent Disability:
>
> \* A Social Security Award of Disability Benefits;
>
> \* Receipt of Total and Permanent Disability benefits from

> the U.S. Department of Veterans Affairs; or
>
> \* Two medical reports from independent physicians, both reports stating that you are Totally and Permanently disabled. The blank medical reports used by the physicians can be obtained from the Fund office during normal working hours, or they can be mailed to you.
>
> Fund records indicate you began receiving Early Retirement Benefits effective May 1, 2012. If you are considering applying for Total and Permanent Disability Benefits, you must complete the application forms before April 30, 2013.
>
> The Trustees encourage you to contact the Fund Office if you have any questions regarding this matter.
>
> If you are not disabled, please disregard this notice.
>
> Sincerely,
>
> BOARD OF TRUSTEES
>
> Enclosure

Complaint, Ex. A.

On April 2, 2013, Schultz received a Notice of Award from the Social Security Administration, finding that he was disabled and entitled to monthly Social Security disability benefits effective May 1, 2012. On that same date, Schultz spoke by telephone with Michael Gantner, Administrator for the Plan. Schultz told Gantner that he had received approval for his Social Security Disability Claim. Gantner advised Schultz to come immediately to the Plan's offices in Elm Grove, Wisconsin in order

to complete an application for TDB. Schultz complied and traveled to Elm Grove. Upon his arrival, Schultz was advised by a clerk that he was two days late and was not permitted to complete an application. Schultz appealed to Gantner who deferred to the clerk.

Schultz's application was deemed late pursuant to Article X, Section 6(b)(2) of the Plan, which provides that a participant can apply for benefits "not less than 30 days nor more than 90 days after the Plan provides the Participant and spouse with detailed information concerning their Benefit options." Schultz later filed an application through counsel. Schultz's application was denied, and the denial was upheld on appeal, because Schultz "did not receive an illustration sheet at least 30 days before the annuity starting date." Complaint, ¶ 22; Letters dated June 18, 2013 and August 6, 2013, ECF Nos. 15-4 and 15-6.

A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). To survive such a motion, the complaint (or the answer) must allege enough facts to state a claim to relief (or an entitlement to a defense) "that is plausible on its face." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court

may consider the complaint, the answer, and any written instruments attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The Court can also consider documents that are referenced in the complaint, such as the Plan, the Summary Plan Description (SPD), and the denial letters cited above. *See, e.g., White v. Marshall & Isley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (district court may rely on documents that are referenced in the complaint, concededly authentic, and central to the plaintiffs' claim). Thus, it is not necessary for the Court to convert either motion to a motion for summary judgment. *Cf.* Fed. R. Civ. P. 12(d).[2]

The Plan provides that it shall be "administered solely by the Trustees, and employees or agents of the Trustees acting for them as authorized," and that "[a]ny decision of the Trustees or the Trustees' delegates shall be made in the sole and absolute discretion of the Trustees or the delegate, as applicable." Article X, Section 1. This language is

---

[2] Schultz does not argue that the defendants' motion should be converted to one for summary judgment. Defendants, on the other hand, object to certain evidence submitted by Schultz and argue that his motion should be converted. *See*, ECF No. 25. The evidence submitted by Schultz is not relevant to the forthcoming analysis; indeed, Schultz concedes that the evidence is not relevant to his motion for judgment on the pleadings. ECF No. 28, at 5 ("the documents plaintiff submitted were not tendered in support of plaintiff's motion for judgment on the pleadings, but rather were submitted to redress defendants' mendacity"). Accordingly, it is unnecessary to convert Schultz's motion.

sufficient to confer discretionary authority upon the Trustees to administer the Plan. *See, e.g., Militello v. Cent. States, S.E. & S.W. Areas Pension Fund*, 360 F.3d 681, 685-86 (7th Cir. 2004); *see also, Hagopian v. Johnson Fin. Group, Inc. Long-Term Disability Plan*, No. 09-C-926, 2010 WL 3808666, at *5 (E.D. Wis. Sept. 23, 2010). Thus, the Court's only role is to determine whether the denial of benefits was arbitrary and capricious. Under this standard, "an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Wetzler v. Ill. CPA Soc'y & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009).

As outlined in the October 29, 2012 letter (reproduced above), Schultz filed his application before April 30, 2013, and he provided "evidence" of total disability in the form of an award of social security disability benefits. Such an application can only be made "not less than 30 days nor more than 90 days after the Plan provides the Participant and spouse with detailed information concerning their Benefit options." Article X, Section 6(b)(2). This provision implements Section 417 of the Internal Revenue Code, 26 C.F.R. § 1.417(e)-1(b)(3)(ii) ("A plan must provide participants with the written explanation of the [Qualified Joint and Survivor Annuity] required by Section 417(a)(3) no less than 30 days and

no more than 90 days before the annuity starting date, . . ."). It is undisputed that Schultz never received "detailed information" concerning his benefit options within the applicable time frame. Therefore, Schultz is not entitled to TDB under the Plan.

Schultz argues that while the Plan requires the receipt of "detailed information" regarding benefit options, it does not specify whether such information must be received in written form. Thus, Schultz argues that the Board of Trustees erred by requiring the receipt of an "illustration sheet." However, the SPD[3] explains that the participant must "receive a Benefit Illustration Sheet from the Pension Fund Office 30-90 days before [the participant] want[s] benefit payments to begin, . . ." SPD at 59. To the extent that the phrase "provide[] . . . with detailed information concerning . . . Benefit options" can be considered ambiguous, the Board's use of "interpretive tools to disambiguate ambiguous language is . . . entitled to deferential consideration by a reviewing court." *Becker v. Chrysler LLC Health Care Ben. Plan*, 691 F.3d 879, 890 (7th Cir. 2012). It was entirely appropriate for the Board to "look outside the plan's written language" to the SPD "in deciding what those terms are, i.e., what the language means."

---

[3] SPDs "provide communication with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan." *CIGNA Corp. v. Amara*, --- U.S. ---, 131 S. Ct. 1866, 1878 (2011) (emphasis added).

- 7 -

*Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012); *see also Becker* at 893 (noting that the Plan administrator's interpretation is "bolstered by language from the Summary Plan Description, . . ."). It makes logical sense, as the SPD confirms, for "detailed information" to be given in written rather than oral form.

Schultz's argument, even if merited, does not help him in his pursuit of benefits. It is undisputed that Schultz did not timely receive detailed information about his benefit options, whether written or orally. Were the Court to remand this case for further consideration, the Board of Trustees would simply deny Schultz's application once again, likely citing the general language in the Plan, as opposed to the more specific language contained in the SPD. *See Loyola Univ. of Chi. v. Humana Ins. Co.*, 996 F.2d 895, 901 (7th Cir. 1993) ("The mere omission of a defense in a letter to a plan beneficiary does not constitute a waiver of the defense").

Schultz also brought a claim for estoppel, on the theory that he relied on the defendants' representation that he had until April 30, 2013 to file an application for TDB supported by medical evidence from two independent physicians. By March 30, 2013, Schultz had already procured evidence from one independent physician and was in the process of obtaining the same from a second physician. Once Schultz learned that he

was entitled to social security benefits, the need to obtain an opinion from a second physician was obviated. By then, however, it was too late, at least according to the Board, which enforced the "not less than 30, not more than 90" rule set forth in the Plan.

Schultz did not respond to the defendants' argument that he failed to state an actionable estoppel claim. Indeed, Schultz doesn't mention estoppel in any of his briefs — neither in opposition to the defendants' motion for judgment on the pleadings, nor in support of his own motion. Perhaps this is because, according to the law of this circuit, estoppel is "at best a difficult theory to use with respect to an ERISA benefits plan." *Davis v. Combes*, 294 F.3d 931, 939 (7th Cir. 2002). Even if estoppel can be used to modify an ERISA plan, its elements aren't met here. *Id.* (listing elements for equitable estoppel). The defendants' October 29, 2012 letter contains no "incorrect representation[s] of fact, . . ." *Frahm v. Equitable Life Assurance Soc'y of U.S.*, 137 F.3d 955, 961 (7th Cir. 1998). Everything in the letter is absolutely true: in order to receive TDB, Schultz needed to "complete the application forms by April 30, 2013." The letter does not purport to be a laundry list of every single prerequisite to the receipt of TDB, nor does the letter *guarantee* that TDB will be awarded if the listed requirements are satisfied. In any event, Schultz's estoppel claim is waived

due to his failure to defend or advance it. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (failure to present an issue during briefing constitutes waiver).

Finally, the defendants argue that they are entitled to fees and costs as a prevailing party. 29 U.S.C. § 1132(g). Although the Seventh Circuit has "formulated the test for when attorneys' fees should be awarded under ERISA in various ways," the "various formulations boil down to the same bottom-line question: 'Was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 464 (7th Cir. 2001). There is a "modest presumption that the prevailing party in an ERISA case is entitled to a fee." *Id.*

This Court's review is limited to arguments actually raised during the administrative process. *Sisters of the Third Order of St. Francis v. Swedish Am. Group Health Ben. Trust*, 901 F.2d 1369, 1371 (7th Cir. 1990); *Losinske v. Wis. Carpenters' Pension Fund*, 526 F. Supp. 2d 908, 919 (W.D. Wis. 2007). The only argument presented by Schultz here — a hyper-technical reading of the Plan language that, even if merited, would not result in a grant of benefits — was not presented to the Board of Trustees during their review of Schultz's claim. Therefore, the Court easily finds

that Schultz's litigation position in this matter was not substantially justified.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** defendants' motion for judgment on the pleadings [ECF No. 15] is **GRANTED**. Schultz's motion for judgment on the pleadings [ECF No. 20] is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

Defendants' motion for their reasonable attorneys' fees and costs of defending against Schultz's suit [ECF No. 15] is also **GRANTED**. Defendants' fee application should be submitted within **thirty (30) days** of the date of this Order.

Dated at Milwaukee, Wisconsin, this 14th day of October, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**